**Patrice B. PAUL, etc., Plaintiff,**

v.

**Roy C. GOMEZ, M.D., Defendant.**

**No. 1:99CV00166.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Oct. 27, 2000.

Mary Lynn Tate, The Tate Law Firm, Abingdon, VA, Matthew Brundred Murray, Richmond and Fishburne, Charlottesville, VA, for Patrice B. Paul.

Thomas W. Farrell, Wooten & Hart, Roanoke, VA, for Roy C. Gomez, M.D.

**OPINION AND ORDER**

JONES, District Judge.

The question for resolution is whether the Virginia Dead Man's Statute applies to prevent the defendant physician from testifying to his version of the treatment he gave his patient, where the patient is now deceased, but where the patient's wife was present and will testify as to the alleged negligent treatment. Based on the history and purpose of the Virginia statute, I find that it does not exclude the doctor's testimony.

**I**

The plaintiff is the personal representative of Johnny M. Beverly, deceased. The present action is a claim for wrongful death resulting from alleged medical malpractice by·the defendant, Roy C. Gomez, M.D. Central to the plaintiff's cause of action is the claim that Dr. Gomez, on multiple occasions, neglected to refer Mr. Beverly to a specialist or pursue other diagnostic cardiovascular tests. The defendant counters that he made such recommendations to Mr. Beverly, but that Mr. Beverly refused to consent to them.

To prove that no referrals or other testing were ordered, the plaintiff asserts that no notations appear in Dr. Gomez's office visit records that would indicate that such recommendations were made. Further, the plaintiff has submitted the affidavit of Jackie Beverly, widow of Mr. Beverly, who was present at her husband's office visits

to Dr. Gomez,[1] stating that "Dr. Gomez never told me or my husband that Johnny needed any of these tests or an appointment with a cardiologist." (Beverly Aff. ¶ 6.)

The plaintiff has now moved to exclude the testimony of Dr. Gomez regarding his version of the conversations that took place between Dr. Gomez, Mr. Beverly, and Mrs. Beverly, pursuant to Code of Virginia section 8.01–397, known as the "Dead Man's Statute," on the ground that Mr. Beverly is deceased and thus incapable of testifying. In response, the defendant argues that the Dead Man's Statute does not apply, and that even if it does apply, Dr. Gomez's sworn statement that he has a habit of making recommendations to patients such as Mr. Beverly provides sufficient corroboration to allow him to testify.

## II

The Dead Man's Statute provides, in pertinent part, that "[i]n an action by or against a person who, from any cause, is incapable of testifying, or by or against [a] representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony." Va.Code Ann. § 8.01–397 (Michie 2000). Because state law supplies the rule of decision in this diversity action, the Dead Man's Statute applies pursuant to Rule 601 of the Federal Rules of Evidence. *See* Fed.R.Evid. 601; *see also* Fed.R.Evid. 601 Advisory Committee Notes on 1974 Enactment (stating that rule was written to allow state Dead Man's Statutes to apply in diversity cases).

The plaintiff contends that even though Mrs. Beverly will testify as to her version of her husband's dealings with Dr. Gomez,

Dr. Gomez is precluded from testifying as to his version of those dealings because Mr. Beverly is deceased. However, I find Virginia law to the contrary.

At common law all witnesses who had an interest in the outcome of the litigation were incompetent to testify. Virginia's legislature abolished this general disqualification in the nineteenth century, although the statutes contained many exceptions, including a forerunner to the present Dead Man's Statute that excluded testimony by the survivor of a transaction with a person unable to testify by reason of death or other cause. *See Epes' Adm'r v. Hardaway,* 135 Va. 80, 115 S.E. 712, 713 (1923).

The Virginia code revision of 1919 adopted the present version of the Dead Man's Statute and sought to remove "practically all disqualifications," by allowing interested parties to testify in general, and allowing testimony against a party incapable of testifying, provided the testimony was corroborated. *See id.; see also* Note, *Corroboration in Virginia Under Section 8–286,* 39 Va. L.Rev. 395, 395–96 (1953). Virginia courts have recognized that the statute was "highly remedial" in nature, and should not be construed to create any new disqualifications or burdens on witnesses who would have been competent under the previous law. *Epes' Adm'r,* 115 S.E. at 716; *Robertson's Ex'r v. Atlantic Coast Realty Co.,* 129 Va. 494, 106 S.E. 521, 524 (1921). Therefore, "no corroboration is required of those witnesses who were competent before the Code of 1919 became operative, and who did not then require corroboration." *Epes' Adm'r,* 115 S.E. at 716. Because Dr. Gomez would have been competent to testify under the law as it existed before 1919, I find that no corroboration is required under the current law for his testimony to be admissible.

---

**1.** There is a factual dispute over whether Mrs. Beverly was present at Mr. Beverly's first visit to Dr. Gomez on February 14, 1997. Mrs. Beverly states that "it was [her] recollection" that she did not attend the first visit (Beverly Aff. ¶ 2.), but Dr. Gomez states that he specifi-

cally remembers Mrs. Beverly being there. (Gomez Dep. at 41–42, 48–49.) Since the jury may accept Dr. Gomez's recollection, I cannot exclude his testimony, even as to the first visit.

Prior to the 1919 version of the Virginia Code, the witness competency statutes provided an exception to the bar of testimony by an interested party against a deceased party, allowing testimony where "some person, having an interest in or under such contract or transaction, derived from the party so incapable of testifying, has testified in behalf of the latter or of himself, as to such contract or transaction." *Epes' Adm'r,* 115 S.E. at 714. Thus, where a living, interested person was able to testify about a transaction, the adverse party became a competent witness to counter that testimony. For example, in a dispute concerning an alleged gift *causa mortis,* at least three people were present when the alleged transaction took place: the decedent, the decedent's daughter, and the decedent's servant. *See Copeland v. Copeland's Adm'r,* 24 S.E. 218, 219 (Va.1896). The daughter and the servant had conflicting accounts as to whether the gift was made to the servant. *See id.* The court found that the servant was competent to testify to counter the daughter's version of the events surrounding the alleged giving of the gift. *See id.; see also Witt v. Creasey,* 117 Va. 872, 86 S.E. 128, 129 (1915) (allowing testimony by an adverse party to counter testimony by the son of the decedent).

The present case is analogous to the cases in which testimony was allowed under the law prior to 1919. Like the transaction at issue in *Copeland,* three people were present at the transactions at issue, one of which having died, the remaining two claiming conflicting versions of what occurred. While Mrs. Beverly is not a formal party to the present case, there is no question but that she is an interested party, since she is a statutory beneficiary under the Virginia wrongful death statute. *See* Va.Code Ann. § 8.01–53 (Michie 2000). Under the law a century ago, Dr. Gomez would have been able to testify without corroboration to counter Mrs. Beverly's version of the facts.

The Virginia courts are clear that the modern requirement of corroboration is only applicable to "the new class of witnesses, made competent for the first time by the Code of 1919," namely, those who can now testify, with corroboration, "to contracts or transactions to which there [were] no other living witness." *Epes' Adm'r,* 115 S.E. at 716, 715. Indeed, the *Epes' Administrator* court acknowledged that though the plain language of the statute does not contain such a limitation, the new statute could not be construed "to require corroboration or additional proof where none was required prior to the new enactments." *Id.* at 716. Therefore, under Virginia law, the requirement of corroboration cannot serve to exclude the testimony of Dr. Gomez, who is competent to counter the testimony of Mrs. Beverly, an interested witness who was present at the contested transactions.

This finding is supported by the policy of the Dead Man's Statute. The purpose of the statute is to "prevent [ ] an opportunity for the survivor to prevail by relying on his own unsupported credibility, while his opponent, who *alone* might have contradicted him, is silenced by death." *Hereford v. Paytes,* 226 Va. 604, 311 S.E.2d 790, 793 (1984) (emphasis added). Thus, the statute is designed to avoid the unfairness of a situation where the jury only hears one version of the facts. Here, the jury will hear two versions of the facts from two opposing witnesses, one representing a view in the interest of the decedent's estate, the other representing a view in the interest of the defendant. It is difficult to see how any unfairness to the decedent's estate could result from this situation.

Because the Dead Man's Statute does not impose a corroboration requirement in this case, I do not reach the issue of whether Dr. Gomez's affidavit regarding his professional habit constitutes sufficient corroboration.

## III

For the foregoing reasons, it is **OR-DERED** that the plaintiff's Motion to Exclude Testimony Pursuant to Code of Virginia Section 8.01–397 (Doc. No. 25) is denied.