Present: All the Justices

OSCAR JOHNSON, ADMINISTRATOR
OF THE ESTATE OF CYNTHIA Y. BELL,
DECEASED

v. Record No. 012009    OPINION BY JUSTICE ELIZABETH B. LACY
                                    June 7, 2002
JOSEPH JOHN RAVIOTTA, M.D., ET AL.

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Charles L. McCormick, III, Judge Designate

In this appeal from an adverse judgment in a medical malpractice case, Oscar Johnson, administrator of the estate of Cynthia Y. Bell, claims that certain evidence did not meet the corroboration requirements of Code § 8.01-397 as a matter of law and, therefore, the trial court erred in instructing the jury on corroboration and in allowing the jury to consider such evidence.

## I.  FACTS

Dr. Joseph John Raviotta provided prenatal care to Cynthia Y. Bell in the summer and fall of 1997.  On November 9, 1997, Ms. Bell, then 30 weeks pregnant, arrived at the emergency room of Community Memorial Healthcenter (the Hospital) complaining of gastrointestinal upset, vomiting, and abdominal cramping. The emergency room physician diagnosed her condition as a urinary tract infection and referred her to Dr. Raviotta for further care.

The next day, November 10, Ms. Bell went to Dr. Raviotta's office. The office records reflect that the staff and Dr. Raviotta documented a weight gain of four and one-half pounds over two weeks, totaling a seven and one-half pound gain in less than a month, a three plus proteinuria (protein in the blood) reading, a systolic blood pressure of 146, and a diastolic pressure of 80. Dr. Raviotta concluded that Ms. Bell had a urinary tract infection, prescribed antibiotics, and instructed her to return to his office in two weeks.

On the morning of November 15, Ms. Bell returned to the Hospital and was diagnosed with preeclampsia and preterm labor. Preeclampsia is a disorder experienced in approximately seven to ten percent of pregnancies during the third trimester. It involves a constriction of the blood vessels called "vasospasm" that produces unusually high blood pressure and is potentially harmful to the kidneys, liver, and the brain. Preeclampsia is treated by delivery of the baby, after which the risks of preeclampsia recede in most patients.

Dr. Raviotta performed a Cesarean section and delivered Ms. Bell's child at 1:41 p.m. Ms. Bell was transferred from the Post Anesthesia Care Unit to her hospital room at 4:00 p.m. Dr. Raviotta ordered that her post-delivery care include a Magnesium Sulfate protocol, a treatment which prevents the seizures caused by severe preeclampsia. That protocol required

administering magnesium sulfate, monitoring the patient's blood pressure, pulse, and respiration every thirty minutes, and monitoring fluid intake and output every hour.  Dr. Raviotta instructed that if the urine output fell below 30 cc per hour, he was to be notified immediately, as low urine output indicates that the preeclampsia is impeding normal organ function.

Jean Lynette Fuller, a staff nurse at the Hospital, was assigned to provide nursing care to Ms. Bell.  Nurse Fuller's duties included following the Magnesium Sulfate protocol prescribed by Dr. Raviotta; however, Ms. Bell's chart contained no record, made by Nurse Fuller or anyone else, of any of her vital signs from the time she returned to her room at 4:00 p.m. until 6:00 p.m.

Shortly after 6:00 p.m., Shaun Bell, Ms. Bell's sister, called Nurse Fuller to Ms. Bell's room.  Ms. Bell was unresponsive to verbal and tactile stimuli, her eyes were open, pupils dilated, and her blood pressure had fallen.  Nurse Fuller called Dr. Raviotta, informed him of Ms. Bell's condition, and, in response to his questions, told him that Ms. Bell's urine output was "fine."  Dr. Raviotta came to the Hospital and after checking on Ms. Bell, ordered that she be given blood transfusions.  The transfusions began at 8:00 p.m. At 11:20 p.m., Ms. Bell suffered seizure activity and went into

cardiopulmonary arrest.  Ms. Bell was resuscitated, but she never regained consciousness.  Ms. Bell died on December 6, 1997.  Although the expert witnesses did not agree on the exact cause of Ms. Bell's death, they did agree that Ms. Bell's preeclampsia was a significant factor in her death.

In his motion for judgment, Johnson asserted that Dr. Raviotta was negligent in failing to properly diagnose and treat Ms. Bell for preeclampsia on November 10 and in failing to appropriately monitor her condition on November 15.  He also alleged that the Hospital was negligent because its employee, Nurse Fuller, failed to monitor Ms. Bell's vital signs and urine output as ordered by Dr. Raviotta on November 15.  These instances of negligence, Johnson alleged, were direct and proximate causes of Ms. Bell's death.  Following a three-day trial, the jury returned a verdict in favor of the defendants and the trial judge entered judgment on that verdict.  We awarded Johnson an appeal.

## II.  ARGUMENT

Johnson's nine assignments of error relate to the application of Code § 8.01-397, often referred to as the "dead man's statute," to three items of evidence:  (1) Dr. Raviotta's testimony that he checked Ms. Bell's blood pressure at the beginning and the end of her November 10 visit to his office; (2) Dr. Raviotta's testimony that he checked on Ms. Bell's

4

condition between 6:30 p.m. and 7:00 p.m. on November 15; and (3) Nurse Fuller's testimony that she monitored Ms. Bell's vital signs and urine output between 4:00 p.m. and 6:00 p.m. on November 15.

Code § 8.01-397 provides that, in an action by an executor or administrator on behalf of a person who is not able to testify, "no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony." Thus, testimony is subject to the corroboration requirement if it is offered by an adverse or interested party and if it presents an essential element that, if not corroborated, would be fatal to the adverse party's case. Rice v. Charles, 260 Va. 157, 165-66, 532 S.E.2d 318, 322-23 (2000); Hereford v. Paytes, 226 Va. 604, 608, 311 S.E.2d 790, 792 (1984). If corroboration is required, such corroboration must be supplied by evidence which tends in some degree to independently support the element essential to the adverse or interested party's case, but the testimony need not be corroborated on all material points. Rice, 260 Va. at 165-66, 532 S.E.2d at 323; Brooks v. Worthington, 206 Va. 352, 357, 143 S.E.2d 841, 845 (1965). Corroborating evidence may be circumstantial evidence or come from another witness. Id.

Johnson asserts that the contested testimony was subject to the corroboration requirements of Code § 8.01-397, and, as a

5

matter of law, no such corroboration existed.  Therefore, according to Johnson, the trial court erred in allowing the jury to consider this evidence and whether it was corroborated.

## A.   Procedural Issues

The Hospital and Dr. Raviotta initially assert that Rule 5:25 precludes our consideration of Johnson's challenges to Dr. Raviotta's and Nurse Fuller's testimony regarding Ms. Bell's treatment on November 15.  Johnson did not object to this testimony when it was offered, but raised his objection during the discussion of jury instructions and during his motion to set aside the verdict.  Therefore, the Hospital and Dr. Raviotta argue that these objections were not timely made and consequently were not preserved for appeal under Rule 5:25.

The purpose of Rule 5:25 is to ensure that the trial court has an opportunity to rule intelligently on a party's objections and avoid unnecessary mistrials or reversals. Morgen Indus., Inc. v. Vaughan, 252 Va. 60, 67, 471 S.E.2d 489, 493 (1996).  Generally, to satisfy the requirements of the rule, an objection must be made contemporaneously with the introduction of the objectionable evidence or at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error.  Reid v. Baumgardner, 217 Va. 769, 773-74, 232 S.E.2d 778, 781 (1977).

6

The sufficiency of corroborative evidence under Code § 8.01-397 is usually a question for the jury. Brooks, 206 Va. at 357, 143 S.E.2d at 845; Taylor v. Mobil Corp., 248 Va. 101, 110, 444 S.E.2d 705, 710 (1994). The question for the trial court is whether, given the entire trial testimony, there is more than a scintilla of corroborative evidence upon which the jury may determine sufficiency. Id. This question may be unanswerable until the close of evidence because only at that point can all evidence be surveyed to determine if sufficient corroboration exists. Johnson argued that the jury should not be allowed to consider the testimony at issue because it was uncorroborated as a matter of law. The record shows that the trial court was aware of Johnson's objection before the matter was submitted to the jury and, had it agreed with Johnson, the trial court could have provided the appropriate instruction to the jury regarding the testimony in issue. Therefore, we conclude that Johnson did not waive these assignments of error by failing to preserve the issue in the trial court pursuant to Rule 5:25.

### B. Application of Code § 8.01-397

Citing Paul v. Gomez, 118 F. Supp. 2d 694 (W.D. Va. 2000), Dr. Raviotta and the Hospital assert that the corroboration requirement of Code § 8.01-397 is not applicable to the testimony Johnson challenges regarding Ms. Bell's care on

7

November 15.  In Paul, the Federal District Court concluded that Virginia's dead man's statute does not require corroboration of a party's testimony regarding certain facts if another interested party testified to a version of the facts on behalf of the decedent.  118 F. Supp. 2d at 696.

In this case, Shaun Bell testified that she was in her sister's room prior to the time she summoned Nurse Fuller at 6:00 p.m., but that she had not seen a nurse take any of Ms. Bell's vital signs prior to that time.  Johnson testified that he reached the hospital sometime between 6:30 p.m. and 7:00 p.m. and that he did not see Dr. Raviotta during that time. This testimony presented the version of the facts on behalf of Ms. Bell, and therefore, the argument goes, the testimony of Dr. Raviotta and Nurse Fuller regarding their care of Ms. Bell during these time periods was not subject to the corroboration requirement of Code § 8.01-397.

The Federal District Court in Paul relied on Epes' Adm'r v. Hardaway, 135 Va. 80, 115 S.E. 712 (1923), which held that the corroboration requirement of the dead man's statute applied "only to that class of witnesses who were made competent for the first time by the Code of 1919, and that, no corroboration is required of those witnesses who were competent before the Code of 1919 became operative, and who did not then require corroboration."  135 Va. at 92-93, 115 S.E. at 716.  As

8

discussed in Epes' Adm'r, prior to 1919, a party could testify without corroboration even though an adverse party was unable to testify, if another person, who had an interest derived from the person unable to testify, testified on behalf of himself or the person unable to testify. Id. at 86, 115 S.E. at 714. An interested party is "one, not a party to the record, who is pecuniarily interested in the result of the suit." Merchants Supply Co., Inc. v. Ex'rs of the Estate of John Hughes, 139 Va. 212, 216, 123 S.E. 355, 356 (1924).

While the principle relied upon by the Hospital and Dr. Raviotta accurately states Virginia law, Johnson asserts that the disputed testimony remains subject to the corroboration requirement of Code § 8.01-397 because neither he nor Shaun Bell are interested parties under the statute. Relying on Coalter's Ex'r v. Bryan, 42 Va. (1 Gratt.) 18 (1844), Johnson asserts that he is not an interested party because his status as an administrator "is not a pecuniary interest." However, the holding in Coalter's Ex'r that the executor had no pecuniary interest was not a rule of general applicability, but a determination made on a specific factual basis.

At the time Coalter's Ex'r was decided, any person with a pecuniary interest in a case was deemed incompetent to testify in that case. Id. at 86-7. The Court in Coalter's Ex'r recited that typically an executor is "identified with [an

9

estate's] interests, and bound to assert and defend them,"
thereby vesting the executor with a pecuniary interest in cases
involving the estate.  Id. at 87.  However, because Coalter's
Ex'r involved a dispute between two classes of persons, each
claiming an interest in the estate, the Court determined that
the executor did not have a pecuniary interest in the
litigation:

> The estate which [the executor] represents is in
> nowise interested in such a contest.  Nor has he
> himself any personal interest in it.  The
> question is, not for what or for how much, but to
> whom he shall account, and that in a pecuniary
> point of view must be to him a matter of perfect
> indifference.

Id.  In this case, Johnson is the legal representative of Ms.
Bell's estate and, as such, bound to assert the interests of
the estate.  Unlike the executor in Coalter's Ex'r, Johnson,
as administrator, has a direct pecuniary interest in the
outcome of this litigation and, therefore, is an interested
party for purposes of the statute.  Accordingly, the
corroboration requirement of Code § 8.01-397 does not apply to
Dr. Raviotta's testimony that he visited Ms. Bell's room
between 6:30 p.m. and 7:00 p.m. on the evening of November 15.

Shaun Bell, however, is not an interested party for
purposes of Code § 8.01-397.  Shaun Bell does not have a

10

pecuniary interest in this suit[1] and we have never held that blood relationship alone makes a witness an "interested party" under the statute.  Therefore, Nurse Fuller's testimony regarding the care she provided Ms. Bell between 4:00 p.m. and 6:00 p.m. on November 15 is subject to the corroboration requirement.

We now consider Johnson's challenges to the testimony in issue.

### Dr. Raviotta's Testimony

Johnson's expert witness, Dr. Michael A. Ross, testified that elevated blood pressure is a sign of preeclampsia.  He opined that Ms. Bell's elevated blood pressure at the November 10 appointment, along with her excess weight gain and high blood protein count, should have alerted Dr. Raviotta to the possibility that Ms. Bell was suffering from preeclampsia rather than simply a urinary tract infection.  Dr. Ross concluded that the failure to consider the data supporting a diagnosis of preeclampsia and treatment of only the urinary infection was a breach of the standard of care.

Dr. Raviotta testified that he took a second blood pressure reading at the end of the Ms. Bell's November 10, 1997 appointment, which showed that her blood pressure had returned

---

[1] Ms. Bell's surviving son is her sole statutory beneficiary under Code § 8.01-53.

11

to normal.  Johnson correctly asserts that the dead man's statute applies to this testimony because it was given by an adverse party and involved an essential element of Dr. Raviotta's claim that the care he provided to Ms. Bell on November 10 did not breach the standard of care.

There is no documentation of Dr. Raviotta's second blood pressure reading for Ms. Bell on November 10, and no other person testified that a second procedure was performed.  Dr. Raviotta asserts that his testimony about the second blood pressure measurement was corroborated by his own testimony that when he had a patient with an elevated blood pressure, he "always recheck[ed] the blood pressure at the end of the visit."

Corroboration for purposes of the dead man's statute cannot come "from the mouth of the witness sought to be corroborated."  Varner's Ex'rs. v. White, 149 Va. 177, 185, 140 S.E. 128, 130 (1927); see also, Ratliff v. Jewell, 153 Va. 315, 326, 149 S.E. 409, 412 (1929).  However, Dr. Raviotta asserts that when the corroborating evidence is evidence of a habit or routine practice, Code § 8.01-397.1 eliminates the corroboration requirement of the dead man's statute.  We disagree.

Code § 8.01-397.1 provides in relevant part:

A.  Admissibility.  Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eye witnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

This section does no more than establish that evidence showing a certain pattern of conduct is relevant evidence and, therefore, a court cannot refuse to admit such evidence on the ground that it is collateral, irrelevant evidence.  Cf. Ligon v. Southside Cardiology Assocs., 258 Va. 306, 319, 519 S.E.2d 361, 368 (1999) (testimony by doctors of their normal routines inadmissible as irrelevant to show conduct on specific occasion).  The phrase "whether corroborated or not" dispensed with any perceived need for corroboration of habit evidence as a condition of admissibility.  Nothing in Code § 8.01-397.1, however, suggests that corroboration is not required when otherwise admissible habit evidence is sought to be admitted under circumstances that bring such evidence within the ambit of the dead man's statute.

The issue before us is whether the habit evidence in this case, consisting only of Dr. Raviotta's testimony, can corroborate other testimony from Dr. Raviotta that is subject to the dead man's statute.  That conclusion is not affected by Code § 8.01-397.1.  Accordingly, because Dr. Raviotta's

13

testimony was not corroborated, we conclude that the trial court erred in allowing the jury to consider this evidence.

## Nurse Fuller's Testimony

Johnson asserts that there was no corroboration of Nurse Fuller's testimony that she monitored Ms. Bell's vital signs and urine output between 4:00 p.m. and 6:00 p.m.  According to Johnson, this testimony was an essential element of the Hospital's defense because, as the Hospital's expert testified, the failure to monitor Ms. Bell's vital signs as directed by Dr. Raviotta, would have deprived the medical staff of information that would have assisted in making a timely diagnosis of Ms. Bell's hypovolemic shock and would have violated the standard of care.  Johnson asserts that Nurse Fuller is an interested party for purposes of the statute because, had liability been imposed on the Hospital due to Nurse Fuller's negligence, the Hospital would have been entitled to indemnification from Nurse Fuller.  Miller v. Quarles, 242 Va. 343, 347, 410 S.E.2d 639, 642 (1991).

The Hospital does not dispute Nurse Fuller's status as an interested party for purposes of the dead man's statute, but argues that her testimony was admissible because it was corroborated.  For the reasons that follow, we reject this argument.

14

The Hospital maintains that Nurse Fuller's testimony was corroborated by documentary evidence and by the testimony of Dr. Raviotta and Nurse Virginia Carter Frost. The documentary evidence the Hospital relies upon are two patient care charts which indicate that Nurse Fuller administered three "units of care" to Ms. Bell between 4:00 p.m. and 4:59 p.m., four "units of care" between 5:00 p.m. and 5:59 p.m., and changed Ms. Bell's IV fluids at 5:00 p.m. Nurse Frost testified that a "unit of care" is treatment initiated by a nurse independent of any physician's orders and that, in order to initiate such units of care, the nurse must assess the patient's condition to determine the appropriate unit of care. The Hospital argues that this testimony and documentary evidence of Nurse Fuller's visits to Ms. Bell confirm Nurse Fuller's testimony that she assessed and monitored Ms. Bell's condition between 4:00 p.m. and 6:00 p.m.

This evidence does show that Nurse Fuller had contact with Ms. Bell and provided care to her during the time period in question, but does not corroborate the specific testimony in issue – that she performed the monitoring required by the Magnesium Sulfate protocol ordered by Dr. Raviotta. Although Nurse Frost testified that the Hospital practice is to chart vital signs when taken whether such signs are normal or not, the charts in evidence do not contain such notations. None of

15

the units of care recorded by Nurse Fuller recited a vital sign. Nurse Frost's testimony that Nurse Fuller had to "assess" the patient's condition to initiate units of care does not indicate that such assessment included taking vital signs or measuring urine output as specified by the Magnesium Sulfate protocol ordered by Dr. Raviotta.

The Hospital also relies on Dr. Raviotta's testimony, that he understood from his conversations with Nurse Fuller that she was monitoring Ms. Bell's condition and that Nurse Fuller's observation of the changes in Ms. Bell's condition led her to contact him around 6:00 p.m., as corroboration of Nurse Fuller's testimony. This testimony, however, does not corroborate Nurse Fuller's testimony.[2] His statement that he understood she was monitoring Ms. Bell's vital signs contains no information upon which such an assumption was based. Thus,

_____

[2] Johnson asserts that Dr. Raviotta's testimony cannot corroborate Nurse Fuller's testimony because the testimony of one adverse witness cannot corroborate the testimony of another adverse or interested party. Ratliff, 153 Va. at 326, 149 S.E. at 412. However, that rule only applies when the corroborating witness has a pecuniary interest in common with the person whose testimony needs corroboration in the judgment or decree sought to be entered based on that testimony. Arwood v. Hill's Adm'r, 135 Va. 235, 242-43, 117 S.E. 603, 606 (1923); Ratliff, 153 Va. at 325-26, 149 S.E. at 412. Johnson asserted that Dr. Raviotta and the Hospital were jointly and severally liable for damages resulting in Ms. Bell's death. Testimony by Dr. Raviotta that formed the basis for a judgment in the Hospital's favor would be testimony against his pecuniary interest because it would leave him with the sole liability for Ms. Bell's

it provides no independent support for the assertion made by Nurse Fuller that she checked Ms. Bell's vital signs during the time period in question and cannot be corroborative. Accordingly, we conclude that the trial court erred in allowing the jury to consider Nurse Fuller's testimony that she monitored Ms. Bell's condition between 4:00 p.m. and 6:00 p.m. on November 15.

### C.  Harmless Error

Both Dr. Raviotta and the Hospital urge that submission of the testimony at issue to the jury and instructing the jury on the issue of corroboration were harmless error.

Dr. Raviotta asserts that any error in the submission of his testimony that he rechecked Ms. Bell's blood pressure during her November 10 appointment was harmless because none of the experts limited their testimony to the second blood pressure reading when concluding that Dr. Raviotta did or did not breach the standard of care.  Thus, he contends that, even without the tainted evidence, there was sufficient evidence in the record to support the jury verdict in his favor.

Similarly, the Hospital argues that Nurse Fuller's testimony was not essential to a finding that the Hospital was liable because her testimony related solely to the issue of

damages.  Therefore, Dr. Raviotta would not be an "interested" party for the purpose of corroborating Nurse Fuller.

negligence and did not relate to the issue of causation. The Hospital asserts that the record supports a verdict in favor of the Hospital on the issue of causation "separate and apart" from Nurse Fuller's testimony.

Both these arguments overlook the principle recently reiterated by this Court in Tashman v. Gibbs, 263 Va. 65, 76, 556 S.E.2d 772, 779 (2002), that where evidence and an instruction have erroneously been submitted to the jury and the record does not reflect whether such evidence and instruction formed the basis of the jury's verdict, we must presume that the jury relied on such evidence and instruction in making its decision. See also, Ponirakis v. Choi, 262 Va. 119, 126, 546 S.E.2d 707, 711-12 (2001); Rosen v. Greifenberger, 257 Va. 373, 381, 513 S.E.2d 861, 865 (1999); Clohessy v. Weiler, 250 Va. 249, 254, 462 S.E.2d 94, 97 (1995). Consequently, we must reverse and remand the matter for a new trial

### III.  CONCLUSION

In summary, for the reasons stated, we conclude that Johnson's assignments of error are not precluded by Rule 5:25, that Shaun Bell is not an interested party for the purpose of Code § 8.01-397, that the corroboration requirements of Code § 8.01-397 are not abrogated by Code § 8.01-397.1, that Code § 8.01-397 applied to the testimony of Dr. Raviotta regarding the November 10 office visit and of Nurse Fuller regarding care

18

given Ms. Bell on November 15, that such testimony, as a matter of law, was not corroborated as required by that statute, that the trial court erred in submitting that testimony and the issue of corroboration of such testimony to the jury, and that such error was not harmless.  Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>