COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Athey
Argued at Fredericksburg, Virginia


MAURICE C. COX

                                                      MEMORANDUM OPINION* BY
v.        Record No. 0795-22-4                        JUDGE MARY GRACE O'BRIEN
                                                         AUGUST 15, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Marissa Ulman, Senior Assistant Public Defender, for appellant.

Jason A. Faw, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


        Maurice Cox contends that the trial court abused its discretion by finding him in violation of

his probation for not completing a treatment evaluation.  He also assigns error to the court's

sentence imposing four years' incarceration.

                                    BACKGROUND

        On appeal, "[t]he evidence is considered in the light most favorable to the

Commonwealth, as the prevailing party below."  *Jacobs v. Commonwealth*, 61 Va. App. 529,

535 (2013).

        In 2003, Cox was convicted of robbery and sentenced to 20 years' incarceration with 9

years and 6 months suspended, and 10 years' supervised probation upon his release.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I. Prior Violations

Cox first violated his probation in 2017, for which the court imposed two years' incarceration and suspended the balance. Cox violated his probation again in 2018. Judge Daniel Fiore, II presided over a revocation hearing on April 5, 2019, and imposed the balance of Cox's sentence. However, Judge Fiore stayed Cox's transfer to the Department of Corrections and ordered that he "remain in the Arlington County Adult Detention Facility and enter and complete the ACT Unit." The ACT Unit is a drug treatment program contained in the Arlington County Adult Detention Facility.

Cox entered the ACT program in May 2019, but he was unsuccessfully terminated in December 2019 for writing inappropriate letters to a fellow program participant and lying about writing those letters.

Following Cox's dismissal from the ACT program, the court heard his motion to reconsider his sentence and on March 6, 2020, ordered that Cox be evaluated for re-admission to the ACT program and complete the program if re-admitted. The order continued the case "for the parties to gather further information regarding the Defendant's options for program completion, as the Court continues to be interested in Defendant's completion of the ACT Unit." The court scheduled a status hearing for June 12, 2020, and remanded Cox to jail.

On May 28, 2020, the ACT Program Manager advised the court that Cox was ineligible for re-admission to the program due to his "security level increasing." The letter cited Cox's prohibited communications and "aggressive" behavior toward another inmate.

On June 10, 2020, the Phoenix House (now the National Capital Treatment and Recovery Program), a community-based drug treatment program, informed Cox that he was eligible for inpatient treatment. The court granted Cox's motion to reconsider and directed that he be transferred "bed-to-bed" from the jail to Phoenix House. The court suspended Cox's original

sentence, and "restored [him] to probation on the same terms and conditions as contained in this Court's September 3, 2003 sentencing order, with the additional special condition that he enter and successfully complete the Phoenix House program."

## II.  Third and Current Violation

Cox successfully completed the Phoenix House program on September 11, 2020, but he was unsuccessfully discharged from a transition program.  By June 30, 2021, he began to miss drug screens.  When he finally had a drug screen in August 2021, he admitted it would reveal cocaine use.  His probation officer filed a major violation report in November 2021 after she could not locate him.[1]

On November 9, 2021, Judge Fiore issued a capias for Cox's arrest based on the probation violations.  Judge Fiore did not check the box on the capias/bond form that specified, "If this box is checked, any bond motion will be presented to the aforesaid judge."  The capias was executed on December 9, 2021, and the case was continued to January 7, 2022, for a probation violation hearing.

The parties appeared before Judge Fiore on January 7.  The record does not include a transcript of the hearing and only contains a "disposition form" signed by Judge Fiore with a handwritten notation: "ACT eval ordered," and a written order continuing the case to March 18, 2022, and stating, "It is further ordered . . . that the Defendant be evaluated [for] entry into the ACT Unit program."

On January 28, 2022, Cox filed a bond motion seeking transfer to the National Capital Treatment and Recovery Program (NCTR), previously known as Phoenix House.  Cox stressed that he had been accepted by NCTR and that he could be admitted on February 1, 2022.  Cox had not been evaluated for the ACT Unit at that point.

---

[1] The letter alleged that Cox had failed to report and comply with his probation officer's instructions, had used controlled substances, had stayed overnight in Maryland without permission, and had absconded from supervision.

The attorneys appeared before Judge William Newman, Jr. on January 31, 2022, for the bond hearing. Through counsel, Cox informed Judge Newman that he was being held on a probation violation, but that his violations resulted from "a very serious drug problem." Cox represented that Judge Fiore "wanted him to be in drug treatment and had screened him for ACT, in addition to the knowledge that we were going to screen him for NCTR." Cox asked the court to transfer him "bed[-]to[-]bed" from jail to NCTR on his own recognizance.

Although the Commonwealth agreed that NCTR would be a "good program" for Cox, it expressed concern because Judge Fiore had ordered an ACT evaluation "to investigate treatment options," and Cox could only be evaluated while incarcerated. The Commonwealth told the court that granting the bond motion "would essentially eviscerate Judge Fiore's order for the ACT evaluation, if it has not yet been done." Cox's counsel did not state whether she had received any information concerning his eligibility for the ACT program, but stressed that "Judge Fiore wants him to get treatment. I think that's clear by him ordering this ACT evaluation. I believe on the last court date we did express that we would also be proceeding with trying to find other treatment options as well."

Judge Newman expressed concern that Judge Fiore "often keeps a leash on these things," and "often checks that box"—referring to the box on the capias/bond form that specified, "If this box is checked, any bond motion will be presented to the aforesaid judge." When Cox asked Judge Newman if Judge Fiore had checked the box, the Commonwealth replied that he had not. Based on Judge Fiore leaving the box unchecked, Cox maintained that Judge Newman could rule on the bond motion. Judge Newman granted the motion for the bed-to-bed transfer but advanced Cox's March 18 revocation hearing to March 4 for the probation officer to be heard.

On February 3, 2022, Judge Fiore sua sponte entered a show cause order based on Cox's failure to undergo an ACT evaluation. The order stated:

> IT APPEARING to the Court that the Defendant was in custody when he was before the Court on January 7, 2022 for a probation violation; that the undersigned judge ordered an ACT evaluation; that each criminal case is assigned at the time of a finding of guilt to a specific judge and remains with said judge for probation violations; that ACT evaluations are conducted only on probationers who are in custody; that on January 28, 2022, Defendant brought a bond motion for release not to the assigned judge; that the bond motion was granted on January 31, 2022; that this Court received a letter from the ACT Program that due to Defendant's request to be released on bond, the ACT evaluation could not be conducted.
>
> IT IS THEREFORE ORDERED by the Court that a rule issue against the Defendant requiring to show cause why probation should not be revoked for his failure to be evaluated for the ACT Unit as ordered by the Court on January 7, 2022; said rule to be returnable March 4, 2022, at 9:30 a.m.

On March 1, 2022, Cox's probation officer filed a major violation addendum asserting that Cox had not made contact since his release and that his "whereabouts remain unknown." The letter also noted that Cox could not be evaluated for the ACT program due to his release.

On March 4, 2022, the probation officer, defense counsel, and the Commonwealth's attorney appeared before Judge Fiore.[2] Defense counsel proffered that she had spoken with the ACT evaluator and she learned that Cox was ineligible for ACT "purely on his custody status." The court asked for a "letter of ineligibility," and counsel stated that the evaluator had not written a letter, "but she . . . ." The court interjected and allowed the probation officer to offer a letter from the ACT evaluator advising that Cox could not "be evaluated for the ACT program due to ACT staff being unable to complete out of custody evaluations." Defense counsel responded that the evaluator told her that based on Cox's "custody status . . . while he was in custody, he would have been ineligible."

---

[2] Defense counsel requested a continuance because Cox was undergoing treatment at NCTR, but the court denied the motion.

When counsel offered to read the evaluator's email to the court, the following colloquy ensued:

> THE COURT: Let me ask you this question. What difference does it make? He wasn't evaluated according to my order. What difference does it make? I ordered him to be evaluated. He violated my order by seeking release to go the National Capital Treatment and Recovery Program. The terms of probation is that the offender will comply with all court orders, so what difference does it make?
>
> MS. ULMAN: Your Honor, he would have been found ineligible so we did look for other options for Mr. Cox.
>
> THE COURT: So you decided that the Court's order for him to be evaluated was unnecessary. Is that what you're telling me?
>
> MS. ULMAN: Your Honor, I don't mean any disrespect. I wanted to look for other treatment options for Mr. Cox.
>
> THE COURT: So you decided that because he was ineligible, he doesn't have to be evaluated according to my order.
>
> MS. ULMAN: I was unsure –
>
> THE COURT: (INTERPOSING) And I hadn't decided whether I would even put him into the ACT program, or whether I would impose time. I didn't have the opportunity to make that decision.
>
> MS. ULMAN: Your Honor –
>
> THE COURT: (INTERPOSING) What defense does he have for violating my order to be evaluated for the ACT unit besides what you've already stated, which the Court finds is insufficient?
>
> MS. ULMAN: Your Honor, I did file a motion with the Court to have him released to the NCTR program.
>
> THE COURT: You didn't file a motion to modify my order. My order was that he gets evaluated for the ACT unit. Anything further?

The court found Cox in violation of his probation, revoked his bond, and set a disposition hearing for April 15, 2022. When the parties returned on April 15, ACT had evaluated Cox and determined that he was ineligible for the program. Cox did not seek reconsideration of the

- 6 -

court's earlier finding that he had violated his probation by failing to undergo an ACT evaluation. Instead, he asked the court to allow him to return to NCTR, arguing that "a lot" of his "issues" during probation stemmed from substance abuse and that he was "very motivated to receive treatment." The court rejected Cox's request, citing his failure to undergo an ACT evaluation. The court found that Cox's decision "to get out . . . inhibited the ACT evaluation" and this decision was "consistent with his attitude toward probation." It observed that, just as Cox had failed to comply with his probation officer, he had failed to comply with the court's order. The court revoked the balance of Cox's suspended time and resuspended all but four years. Cox appeals.

ANALYSIS

After suspending a sentence, a court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Upon "find[ing] good cause to believe that the defendant has violated the terms of suspension," the court has authority to "revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1."[3] Code § 19.2-306(C). "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs*, 61 Va. App. at 535 (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)).

I. Probation Violation

Cox asserts that the court abused its discretion by finding that he violated probation "for not completing [the ACT] evaluation" before requesting bond. He contends that the ACT evaluation would have been futile, as the evaluation would have only revealed "what was already

---

[3] Cox does not assert that his failure to undergo an ACT evaluation was a technical violation under Code § 19.2-306.1.

known—that [Cox] was ineligible for the ACT Unit program," and that the court erred by finding that "the act of being evaluated, not the resulting eligibility determination, is what mattered." Cox argues, as he did at the bond hearing, that the court knew on January 7 that he was going to seek alternative treatment options and that the court "undermined its own ruling from January" by finding Cox in violation of his probation.

Without the January 7 transcript, this Court cannot determine whether the court abused its discretion in finding Cox in violation of his probation. The transcript would have shown whether other treatment options were considered by or discussed with Judge Fiore and what arguments were made to him. We are unable to determine whether and to what extent the court "undermined its own ruling from January," because we cannot evaluate whether the court's January 7 ruling contemplated Cox seeking some form of treatment other than the ACT Unit program. Cox had the responsibility to provide us "with a record from which [we] can decide the issues in the case." *Clarke v. Commonwealth*, 60 Va. App. 190, 199 (2012). He did not do so. Without the full picture of what occurred in this case, we cannot determine whether the court abused its discretion in finding Cox in violation for disregarding his order to complete the ACT evaluation and for that reason, we cannot reach this assignment of error.[4]

## II. Sentencing

In Cox's second assignment of error, he contends that the court erred by imposing a sentence of four years' incarceration.

Cox's sole argument regarding the court's sentencing decision is that by imposing a four-year active sentence, the court violated his right to constitutional protections of due process,

---

[4] In a footnote in his reply brief, Cox asks this Court to find that his failure to request and file a copy of the January 7 transcript was a "clerical error" under Code § 8.01-428(B). However, the record does not support a finding that his failure to submit the transcript arose "from oversight or from an inadvertent omission," and we deny his request.

equal protection, and the prohibition against cruel and unusual punishment. But Cox never presented these constitutional arguments to the trial court. Under Rule 5A:18, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The objection must be timely, or "at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (quoting *Johnson v. Raviotta*, 264 Va. 27, 33 (2002)). "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, appellant does not argue these exceptions and we will not invoke them sua sponte." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010). Because Cox never raised a constitutional objection to his sentence in the trial court, we cannot now on appeal consider those constitutional arguments challenging his sentence.

CONCLUSION

For the reasons stated, we affirm the court's judgment.

*Affirmed*.