PRESENT:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
          Goodwyn, JJ., and Carrico, S.J.

CLAUDE M. SCIALDONE

v.    Record No. 090303

COMMONWEALTH OF VIRGINIA                    OPINION BY
                                      JUSTICE CYNTHIA D. KINSER
BARRY R. TAYLOR, ET AL.                    FEBRUARY 25, 2010

v.    Record No. 090305

COMMONWEALTH OF VIRGINIA

                FROM THE COURT OF APPEALS OF VIRGINIA

     These appeals arise from a judgment of the Circuit Court of

the City of Virginia Beach summarily holding Claude M.

Scialdone, Barry R. Taylor, and Edward S. Jones (collectively,

the defendants) in contempt pursuant to Code § 18.2-456.[1]

Contrary to the holding of the Court of Appeals of Virginia, we

conclude that the defendants preserved for appeal their argument

that the circuit court deprived them of their due process rights

by conducting a summary contempt proceeding.  We also conclude

that all the essential elements of the alleged contemptible

conduct did not occur in the presence of the circuit court and

that the defendants were, therefore, entitled to the due process

rights associated with a plenary proceeding.  Thus, we will

reverse the judgment of the Court of Appeals.

_____

     [1] By order dated June 17, 2009, the Court consolidated these
appeals.

I. RELEVANT FACTS AND PROCEEDINGS

The events leading to the circuit court's finding of contempt occurred during a felony jury trial in which Scialdone and Taylor, law partners, represented a client charged with various offenses stemming from his conduct in an internet chat room with a police officer posing as a minor. Scialdone appeared as lead counsel at trial, and Jones assisted as a law student clerking in Scialdone and Taylor's law office.

On July 12, 2006, during the criminal trial, Scialdone attempted to introduce into evidence a document purporting to be the rules pertaining to the use of a "Yahoo!" internet chat room (Document 1). The Yahoo username appearing near the top of the page was "westisanazi."[2] Based on the Commonwealth's objection, the circuit court refused to admit the document into evidence because it contained a copyright date of 2006 and a print date of July 11, 2006, while the alleged crimes had occurred in 2005. The circuit court instructed Scialdone that only the rules as they existed at the time of the alleged offenses would be admissible.

A short time later, Scialdone again referenced the rules of the chat room and offered into evidence another document setting forth the chat room rules (Document 2). The circuit court noted

_____

[2] Judge Patricia L. West presided over the criminal trial.

2

that Document 2 looked exactly the same as Document 1, except Document 2 had no copyright or print date on the bottom of the page. Document 2 also bore a different Yahoo username: "wndydpooh." When the court inquired as to the document's authenticity, both Scialdone and his client stated that the client's father had printed it shortly after his son's 2005 arrest. The court expressed concern that Document 2 appeared as though someone had "white[d] out" the copyright and print date on Document 1 and then copied the page.

Scialdone then called his client's father to testify, out of the presence of the jury, to establish that he had given Scialdone Document 2. The witness testified that within two weeks of his son's arrest and with the assistance of another family member, he printed the Yahoo chat room rules and delivered them to Scialdone's law partner. According to the witness, the document he provided bore the username of his wife: "pdulyea."

That testimony prompted the circuit court to inquire who "wndydpooh" was and to ask Scialdone the name of his secretary. Scialdone replied that her name was "Wendy [Suttlage]." The court then stated, "Yeah. That's what I thought. Get her over here." The court directed Scialdone to instruct both Suttlage and Taylor to come to the courtroom and to refrain from talking with either of them or "explain[ing] anything else."

3

When Suttlage and Taylor arrived, the circuit court instructed Taylor to wait in the hall while it questioned Suttlage under oath. In response to the court's questioning, Suttlage testified that her Yahoo username was "[w]ndydpooh" and that she had printed off the Yahoo chat room rules the previous weekend but had no knowledge of any alteration of a document. The circuit court then instructed Suttlage to leave the courtroom and called Taylor to testify under oath.

Taylor stated that, when asked earlier that day to search for the chat room rules, he found Document 2 in the conference room of the law office and gave it to Scialdone. Taylor testified that he believed the client had brought Document 2 to the law office. Taylor denied altering Document 2 or knowing of its alteration.

At that point, the circuit court stated:

One of you – one of the three of you, I guess – Mr. Jones, you're in this too – is going to come clean about this. And I expect it to be done if you all – I'm trying to think if there are any other questions I need to ask. You all better – somebody better take the fall or everybody is going to take the fall for this.

The circuit court then brought Suttlage back into the courtroom and asked who had instructed her to print Document 2 from the internet. Suttlage responded that Taylor had done so and that she had given Document 2 to Taylor after printing it. The court inquired of Taylor how Document 2 could be the one

4

provided by the client's father when Suttlage indicated she had printed it and given it to him.  In response, Taylor insisted the two documents (Document 1 and Document 2) were the same and continued to deny knowledge of any alteration.  The court declared: "Mr. Taylor, you better come clean with me right now. What is going on?"  Taylor again denied involvement, whereupon the court instructed Suttlage and Taylor to wait in the hall and to refrain from speaking with each other.

The circuit court then called Jones to the witness stand and placed him under oath.  Upon questioning by the court, Jones admitted he was likely in the law office when Document 2 was printed from the internet but denied he was in the office when it was retrieved that day to be offered into evidence.  When Jones admitted printing Document 1, the court inquired about the username appearing on that document.  The court stated: "I couldn't figure out what it was until it was shown to me what it says. . . . West is a Nazi is what it says. . . . Mr. Scialdone, you better do some talking."

At that point, the circuit court placed Scialdone under oath and sent Jones to the hall.  Scialdone stated that he had not seen any document the previous weekend containing the chat room rules and that he did not know how to use computers, enter a username, or print a document from the internet.  The court replied:

But you know how to white out and copy, I would assume, which is what's been done to this document that is being represented as being given to you two years ago but was actually run off by your secretary . . . on Sunday. . . . There is a serious ethical issue here, if not criminal.

When Scialdone again denied any wrongdoing, the court stated:

Somebody in your firm, Mr. Scialdone – and it's Scialdone and Taylor. So it's you and under your direction, and you're the lead counsel in this case. Somebody has perpetrated a fraud on this court, and I will get to the bottom of it. I am not – I am finding – at this point in time I am finding both you and Mr. Taylor and Mr. Jones – get them back in here – in contempt; and we will deal with it after the trial. And if it comes out that one of you may not have had any knowledge, I may reconsider; but at this point in time all of you are involved.

When Taylor and Jones returned to the courtroom, the circuit court asked who was responsible for the "westisanazi" username.  Jones admitted culpability, stating that he had been "upset about some of the [court's] rulings."  The court admonished Jones and stated:

[R]ight now I am finding all three of you in contempt. We will have hearings on this after the trial is over as to what exactly happened here, but we're going to complete this trial.  And the three of you have been found in contempt.  If anyone is cleared after the fact – and that's if someone can convince me that they were not part of whatever fraud has been perpetrated on the court – then we will deal with that after the fact.

But right now all three of you are being held in contempt.  I'm finding that a fraud was perpetrated on the court.  I'm finding that Westisanazi is not a funny joke, and it's contempt.

. . . .

6

> [W]e will finish this trial and then we will have
> hearings on this matter as far as anything that you
> might – anything else you might want to say.
> Otherwise, it will just be sentencing hearings.

Scialdone replied, "I don't think there's any basis of you finding me in contempt."  Again, the court stated:

> I have a document that you tried to offer into
> evidence, and you argued vehemently that it was a
> document that your client and his father provided to
> you two years ago when, in fact, it's a document that
> your secretary printed out on Sunday for you and Mr.
> Taylor.  Those are the facts.
>
>                    . . . .
>
> [I]f Mr. Taylor wants to take the full fall for it, he
> can; but right now it's both of you on the line and
> . . . Mr. Jones as well.  So if somebody wants to
> break ranks and rat somebody out, they can; but
> otherwise the three of you are in contempt.  And I do
> find all three of you contemptible at this point in
> time.

Taylor asked the court to "note our exception."

After further discussion, the circuit court allowed Taylor to return to the law office to retrieve additional documents in an attempt to locate the 2005 chat room rules provided by the client's father.  The court instructed Taylor to "bring . . . every piece of paper that you have related to this case."  The court required Scialdone and Jones to remain in the courtroom.

When Taylor returned with some documents, the circuit court instructed Suttlage to look through them.  Neither Suttlage nor Taylor could locate the 2005 copy of the chat room rules.  The court then instructed a deputy sheriff to accompany Suttlage to

7

the law office so she could print, using the "wndydpooh" username, another set of the chat room rules using the same computer that she had used to print Document 2. The court believed that a new copy would bear the current day's date on the bottom of the page. The court also wanted Suttlage, with the assistance of the deputy sheriff, to establish when she had printed Document 2. The court again instructed Scialdone, Taylor, and Jones to remain in the courtroom.

Suttlage returned to the courtroom about a half-hour later with another set of the chat room rules she had printed in accordance with the court's instructions. As the circuit court noted, that document had a copyright date of 2006 at the bottom of the page. Referring to Document 2, the court stated: "There's a space on there where evidently something was laid over on the copyright date and it was copied . . . . So which one of the three of you want to fess up? Who took the copyright off the document?"

After again denying any involvement in altering Document 2, Scialdone asked the circuit court: "[A]re we going to be charged – what kind of contempt are we being charged with?" The court responded: "I am just at this point in time saying that I am finding you in contempt, all three of you; and we'll deal with it after the trial." Scialdone stated: "Well . . . if I'm being charged with something, I'd like to know what I'm being charged

8

with, whether it's civil contempt, criminal contempt, or whatever it is. And I may want to have a lawyer for that." The court replied: "[R]ight now I'm finding you in summary contempt, all three of you." The court continued:

> [T]he issues of contempt for the three of you will be dealt with after the trial is over. Right now it's summary contempt, and we'll deal with sentencing at that time. Whether I pursue anything further, I don't know. I haven't made up my mind about that, but right now we're just dealing with the issue of contempt.

When Taylor noted that the most recent set of the chat room rules that Suttlage had printed did not contain a page number at the top, as Document 2 did, the circuit court again instructed Suttlage to return to the law office to print another set of the rules with a copyright date and print date at the bottom of the page and a "Page 1 of 1" header. In explaining what he characterized as a "communication error," Taylor told the court, "I don't think it's contempt." The circuit court replied that it was, "unless I am convinced otherwise that these documents weren't changed." The court then told the defendants: "[L]et's see what they come back with this time."

Suttlage later returned to the courtroom with a set of the Yahoo chat room rules obtained from each of the law office's computers. The court noted that each new document contained the 2006 copyright date and reiterated that Document 2 appeared to have been altered. Without further rulings or any objections

9

from the defendants about the finding of contempt, the court recessed for the day.

On July 14, 2006, after the conclusion of the criminal trial, the circuit court returned to the issue of contempt. The court stated:

> Pursuant to Code Section 18.2-456, I found all three of you in contempt of court. Mr. Taylor and Mr. Scialdone, I found that the two of you attempted to perpetrate a fraud upon the court by you, Mr. Taylor, altering the document that was to be presented to this court and you, Mr. Scialdone, for offering that fraudulent document to the court. That very clearly falls under Section 4 of [Code §] 18.2-456, misbehavior of an officer of the court in his official character.
>
> You, Mr. Jones, violated [Section] 3 of [Code §] 18.2-456 which deals with vile, contemptuous, and assaulting language addressed to or published of a judge for or in respect of any act or proceeding . . . in such court.[3]

The court then sentenced each of them to ten days in jail and a $250 fine. Taylor stated, "Note our exception for the record, please." The court replied: "Note everybody's exception."

---

[3] In relevant part, Code § 18.2-456 prohibits:

(3) Vile, contemptuous or insulting language addressed to or published of a judge for or in respect of any act or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing for or in respect of such act or proceeding;

(4) Misbehavior of an officer of the court in his official character[.]

10

Scialdone, Taylor, and Jones each filed a notice of appeal and, on July 17 and 18, 2006, a motion for stay of execution of the sentence pending appeal and a memorandum in support of the motion. They complained that the contempt proceeding was summary in nature without notice of the statutory basis for the circuit court's action, that they were denied the right to counsel, and that the alleged contemptible conduct was not wholly contained in the record of the underlying criminal trial. They further asserted that the circuit court had conducted an investigation, interrogated witnesses, and sent a deputy sheriff to conduct a warrantless search of their computers and office and to seize documents. The defendants also alleged that the circuit court judge had "immediately left the bench without giving the [defendants] the opportunity to present any evidence, . . . argument or to have the assistance of counsel." For these reasons, they maintained that the alleged contempt was not susceptible to a summary proceeding and therefore requested the circuit court to postpone execution of the sentences pursuant to Code § 19.2-319.

On July 19, because the circuit court had not ruled on their motions, the defendants, now represented by counsel, filed an emergency motion for stay of execution of the sentences in the Court of Appeals. The defendants alleged that the circuit court had "effectively denied their motion by not ruling on it."

In resolving the emergency motion, the Court of Appeals learned that the circuit court had not yet entered a written order holding the defendants in contempt.  Following inquiry by the Court of Appeals, the circuit court entered an order that same day.  After receiving the circuit court's order, the Court of Appeals granted a temporary stay of the execution of the defendants' jail sentences pending a ruling on their motions to stay by the circuit court.

On July 24, 2006, the circuit court convened a hearing on the defendants' motions to stay.  At that hearing, the court told the defendants that they had no right to counsel because it was summary contempt but that it would, nevertheless, "accommodate" their attorney.  After the court remarked a second time that the defendants had no right to counsel, Scialdone stated: "Judge, I believe we have a right to counsel."  The hearing on the motions to stay was continued until July 26, 2006.

At the subsequent hearing, the circuit court ruled:

> Although you've been found in summary contempt and thus have no right to counsel, I have, in fact, read all of the papers and information submitted by [your counsel] and I've also reviewed a memorandum of

law submitted by the National Association of Criminal Defense Lawyers.[4]

> It appears that their position is that this is not summary contempt but some other form of contempt. But I do not find their arguments persuasive. I cannot imagine any worse misbehavior by attorneys in the presence of the court or so near thereto as to obstruct or interrupt the administration of justice than in this case.

The court also stated that the contemptible conduct "did occur in court and had to be dealt with immediately to preserve the integrity of the trial."  Continuing, the court found that although the parties "may not have actually manufactured in the courtroom the fraudulent document . . . , it was certainly continuing in nature" because they offered it into evidence. The court also disagreed with the defendants' assertions that everything regarding the contemptible conduct had not occurred before the court and noted that the defendants had not objected when the court obtained documents from the law office.

The circuit court concluded: "As such, I do not believe that you have a substantial likelihood of prevailing on appeal and thus your request for a stay is denied."  When the court remanded the defendants into custody, Taylor asked: "Judge, could we . . . note our exceptions, please?" The court

---

4 The National Association of Criminal Defense Lawyers filed an amicus brief in support of the defendants' motions for stay, arguing that a summary contempt proceeding was improper under the circumstances.

13

responded, "I'll note your exceptions for all three of you." This Court subsequently granted a stay of execution of the sentences pending appeal.

On appeal to the Court of Appeals, a three-judge panel held that the summary contempt proceeding conducted by the circuit court violated each of the defendant's due process rights and thus remanded for further proceedings. Scialdone v. Commonwealth, 51 Va. App. 679, 718-24, 727, 660 S.E.2d 317, 337-41 (2008). Upon rehearing en banc, the Court of Appeals held that the defendants had "failed to preserve for appeal their argument that the [circuit] court deprived them of due process rights associated with plenary contempt." Scialdone v. Commonwealth, 53 Va. App. 226, 230, 670 S.E.2d 752, 754 (2009). Citing Nusbaum v. Berlin, 273 Va. 385, 406, 641 S.E.2d 494, 505 (2007), the Court of Appeals concluded that the defendants had failed to object to the nature of the proceedings at any point prior to filing their motions to stay and had never specifically asked for the relief they now claimed was improperly denied. Scialdone, 53 Va. App. at 234, 670 S.E.2d at 756. The motions to stay, according to the Court of Appeals, were insufficient to preserve their arguments on appeal because Code § 19.2-319 "does not expressly or implicitly call upon the [circuit] court to reconsider its prior rulings or vacate the judgment being appealed." Id. at 236, 670 S.E.2d at 757. The Court of Appeals

14

stated: "Under Rule 5A:18, raising a legal argument in support of one type of relief does not preserve for appellate review the same argument in support of another type of relief which was never requested." Id. at 234, 670 S.E.2d at 756. Because the defendants had never requested "any procedural right associated with plenary contempt," the Court of Appeals reasoned that it would be wrong to impose upon the circuit court the sua sponte obligation to vacate the conviction "when the party standing to benefit from the vacature . . . conspicuously chose not to seek such relief." Id. at 236-37, 670 S.E.2d at 757.

Now before this Court, the defendants challenge the Court of Appeals' holding that they failed to preserve their argument for appeal as well as the circuit court's conducting a summary contempt proceeding. We will address the issues seriatim.

## II. ANALYSIS

### A. Preservation of Appellate Issue

The defendants maintain that Rule 5:25, Code § 8.01-384, and this Court's precedents require only that a party state his/her objections and the grounds therefor and that their motions to stay and accompanying memoranda satisfied those requirements. The Court of Appeals erred, the defendants maintain, in holding that they were also required to specify the relief sought. According to the defendants, the circuit court had the opportunity to consider their argument objecting to the

summary contempt proceeding and in fact ruled on that argument at the July 26 hearing. They also contend that pursuant to Code § 8.01-384(A), they had to indicate either "the action which [they] desire[d] the court to take" or their "objections to the action . . . and [their] grounds therefor," not both. Code § 8.01-384(A).

The Commonwealth counters that the Court of Appeals correctly applied Rule 5A:18 in holding that the defendants waived their argument that the circuit court deprived them of due process by conducting a summary contempt proceeding. The Commonwealth asserts that the defendants were required to specify in the circuit court the relief they sought and could not merely rely on their motions to stay. The Commonwealth also argues that the purpose of Code § 8.01-384 "is not to define what constitutes a 'specific objection,'" but merely to eliminate "the previous requirement that a formal 'exception' is necessary, after a litigant has already made a specific objection below."

The provisions of Rule 5:25, in relevant part, state: "Error will not be sustained to any ruling of the trial court . . . unless the objection was stated with reasonable certainty at the time of the ruling." Rule 5:25; see also Rule 5A:18. The purpose of the rule is to "afford the trial court an opportunity to rule intelligently on the issues presented, thus

16

avoiding unnecessary appeals and reversals."  Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991).  A party must state the grounds for an objection "so that the trial judge may understand the precise question or questions he is called upon to decide."  Jackson v. Chesapeake & Ohio Ry. Co., 179 Va. 642, 651, 20 S.E.2d 489, 492 (1942).  Thus, the provisions of Rule 5:25 "protect the trial court from appeals based upon undisclosed grounds."  Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988).  To satisfy the rule, "an objection must be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error."  Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002).  In addition, "a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding."  Weidman, 241 Va. at 44, 400 S.E.2d at 167.  The rule is not intended, however, "to obstruct petitioners in their efforts to secure writs of error, or appeals, but . . . to put the record in such shape that the case may be heard in this [C]ourt upon the same record upon which it was heard in the trial court."  Kercher v. Richmond, Fredericksburg & Potomac R.R. Co., 150 Va. 108, 115, 142 S.E. 393, 395 (1928).

In analyzing whether a litigant has satisfied the requirements of Rule 5:25, this Court has consistently focused on whether the trial court had the opportunity to rule intelligently on the issue. "If [the] opportunity [to address an issue] is not presented to the trial court, there is no ruling by the trial court on the issue, and thus no basis for review or action by this Court on appeal." Riverside Hosp., Inc. v. Johnson, 272 Va. 518, 526, 636 S.E.2d 416, 420 (2006). An appellate court can only "determine whether or not the rulings and judgment of the court below . . . were correct." Jackson, 179 Va. at 651, 20 S.E.2d at 493.

For example, in Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 561 S.E.2d 663 (2002), the trial court twice ruled that the language in a particular agreement was ambiguous and permitted the introduction of parol evidence before reversing its previous rulings and holding that the language was unambiguous. Id. at 628-29, 561 S.E.2d at 665-66. In rejecting a claim that the plaintiff had waived one of her appellate arguments, this Court stated that, "[h]aving ruled on the issue three times, the trial court clearly had the opportunity 'to rule intelligently' on the issue," and therefore the case did not implicate the "concerns" underpinning Rule 5:25. Id. at 631-32, 561 S.E.2d at 667. In George v. Commonwealth, 276 Va. 767, 667 S.E.2d 779 (2008), this Court held that although a

18

defendant had failed to use the term "fatal variance" in his argument to the trial court, he nevertheless "sufficient[ly] put that court on notice of his position regarding the inconsistency between the indictments and the jury instruction." Id. at 773, 667 S.E.2d at 782.

Similarly, in Weidman, the plaintiffs failed to object when the trial court orally granted a motion to dismiss. 241 Va. at 43, 400 S.E.2d at 166. However, this Court held that the plaintiffs "repeatedly made known to the court [their] position" both at the hearing when the motion to dismiss was granted and in a motion to rehear. Id. at 44, 400 S.E.2d at 167. Thus, the "opportunity to rule intelligently on the issues presented [was] afforded . . . the trial court." Id.; see also Brown v. Commonwealth, 279 Va. 210, 217-18, ___ S.E.2d ___, ___ (2010) (holding that the Commonwealth made known its position to the trial court, which acknowledged it and thus had the opportunity to rule intelligently on the issue); Raviotta, 264 Va. at 33, 563 S.E.2d at 732 (holding that the trial court was aware of the plaintiff's objection before a matter was submitted to the jury and if the court had agreed with the plaintiff, it could have given the jury a different instruction); Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 5-6 (1991) (holding that although the appellant failed to endorse the final decree or state any objections thereto, he had "made known to the trial

19

court his position" through memoranda and written correspondence prior to the issuance of a final decree and the trial court had "specifically acknowledged the existence of [the appellant's] objections").

Although Scialdone asked the circuit court at one point in the proceeding whether he was being charged with civil or criminal contempt and indicated that he might want an attorney, and later also told the court that he believed the defendants had the right to be represented by counsel, we will focus on whether the motions to stay execution of the sentences and accompanying memoranda satisfied the requirements of Rule 5:25, as did the Court of Appeals. Although a motion to vacate or a motion for reconsideration would have been more precise, the defendants' motions to stay clearly encompassed the arguments they now present on appeal: that the circuit court improperly conducted a summary contempt proceeding and thereby violated their due process rights. In identical motions to stay and memoranda, each defendant argued that he had "a defense to the charge" and that summary contempt was improper because all of the alleged contemptible conduct did not occur before the court, thereby requiring the court to gather evidence before finding the defendants in contempt. Thus, asserted the defendants, the circuit court should have conducted a plenary contempt proceeding and provided them with certain due process rights.

The Commonwealth argues, however, as the Court of Appeals held, that presenting those arguments in motions to stay execution of their sentences did not preserve the issue for appeal. However, numerous cases from this Court regarding the reasons for Rule 5:25 belie the Commonwealth's position. In the motions to stay, the defendants objected to the actions of the circuit court and made the court aware of the grounds for those objections. See Rule 5:25; Code § 8.01-384(A). The motions unquestionably "afford[ed] the trial court an opportunity to rule intelligently" on the issue because the court in fact did so.[5] See Weidman, 241 at 44, 400 S.E.2d at 167. The circuit court stated: "I have . . . read all of the papers and information submitted . . . . It appears [the] position is that this is not summary contempt but some other form of contempt. But I do not find [the] arguments persuasive." The court responded to the defendants' assertions that all of the alleged contemptible conduct did not occur before the court and that the court had improperly called witnesses and collected evidence. Finally, if any doubt remained, the circuit court held: "I do not believe that you have a substantial likelihood of prevailing on appeal and thus your request for a stay is denied."

---

[5] Concerns about the opposing party having the opportunity to address the objections are not present in this case, as there was no opposing party in the summary contempt proceeding before the circuit court.

21

In finding the defendants' arguments without merit, the circuit court necessarily contemplated whether the defendants were entitled to a plenary hearing and was well aware that prevailing on appeal in this instance would result in the defendants' receiving a new hearing. Therefore, the circuit court manifested its awareness of the "precise question [it was] called upon to decide": whether a summary contempt proceeding was proper. See Jackson, 179 Va. at 651, 20 S.E.2d at 492.

Furthermore, the circuit court acknowledged at the July 24 hearing that it had received the motions to stay "last Monday," which was July 17, 2006, the date the defendants filed the motions. Thus, the court was aware of the defendants' objections to the summary contempt proceeding before the court entered its July 19, 2006 written order finding them in contempt. In this respect, we agree with the dissent in the Court of Appeals:

> [W]here a party makes his objections known to the court prior to or at the time of entry of a final order or decree and does not specifically disclaim the desire to have the court rule on those objections, entry of a final order or decree adverse to those objections constitutes a rejection of them and preserves them under Rule 5A:18 [and Rule 5:25] for purposes of appeal.

53 Va. App. at 253, 670 S.E.2d at 765 (Elder, J., dissenting).

In Eure, we stated that "[t]he purpose of Rule 5:25 is 'to protect the trial court from appeals based upon undisclosed

22

grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials.'"  263 Va. at 631, 561 S.E.2d at 667 (quoting Fisher, 236 Va. at 414, 374 S.E.2d at 52).  Here, as in Eure, the "concerns" served by Rule 5:25 are not present.  Id. This Court is not hearing the case on a different record than that before the circuit court, Kercher, 150 Va. at 115, 142 S.E.2d at 395, nor is this appeal on "undisclosed grounds." Fisher, 236 Va. at 414, 374 S.E.2d at 52.  And, because the defendants filed their motions to stay before the circuit court entered its final order, "the trial court [was] in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error."  See Raviotta, 264 Va. at 33, 563 S.E.2d at 731.  The trial court's having had the opportunity to address the defendants' arguments, and then in fact ruling on them, provides a "basis for review . . . by this Court on appeal."  See Riverside, 272 Va. at 526, 636 S.E.2d at 420.

We recognize that in some circumstances, an appellate issue may be waived if a party merely voices disagreement with the action of the trial court and does not state the specific relief requested.  See, e.g., Cheng v. Commonwealth, 240 Va. 26, 38, 393 S.E.2d 599, 606 (1990) (holding that improper comments or conduct during argument will not be considered on appeal unless the opposing party moves for a cautionary instruction or for a

mistrial).  But, because of its particular facts and procedural history, this case does not present such a circumstance.  In sum, however imprecise the vehicle by which the defendants raised their objections, their motions to stay presented their arguments squarely to the circuit court, which then ruled on them.  The purposes of Rule 5:25 as articulated by this Court were satisfied: the circuit court was on notice of the defendants' objections and it had the opportunity to rule intelligently on those objections.

The Commonwealth argues, however, that the holding in Nusbaum v. Berlin compels affirmance of the Court of Appeals' judgment.  Like the defendants, Nusbaum was found in criminal contempt and argued on appeal that the summary contempt proceeding violated his due process rights.  273 Va. at 402, 641 S.E.2d at 503.  On at least two separate occasions after being found in contempt, Nusbaum articulated the particulars of his due process objections regarding the summary contempt proceeding but nevertheless specifically told the trial court that he was not asking the court to reconsider its ruling based on those objections.  Id. at 396-97, 641 S.E.2d at 499-500.  Instead, Nusbaum stated that he was only "mak[ing] sure" he preserved issues for appeal.  Id. at 404, 641 S.E.2d at 504.  This Court held that, by affirmatively advising the trial court he was not seeking a reconsideration of the contempt finding, Nusbaum did

24

not allow the trial court to rectify what he subsequently asserted as error and therefore "did not afford the [trial] court an opportunity to rule intelligently on the due process issues" he raised on appeal. Id. at 406, 641 S.E.2d at 505.

The case now before us is distinguishable from Nusbaum in two respects. First, Nusbaum affirmatively told the trial court he was not asking it to reconsider the finding of contempt based on his due process objections. In contrast, the defendants here made no such disclaimer while articulating their position that they were entitled to a plenary contempt proceeding with accompanying due process rights. In addition, unlike Nusbaum, Scialdone expressed his desire for procedural rights when he advised the circuit court that he might want an attorney.

Second, the circuit court in this case actually decided the merits of the defendants' objections to the nature of the proceeding. Even if, as the Court of Appeals held, the trial court in Nusbaum had the same opportunity to rule on the objections as the circuit court in this case did, the circuit court here in fact ruled on the issue. In sum, Nusbaum's affirmative disavowal of any request for a ruling on the merits of his arguments deprived the trial court of the "opportunity to rule intelligently" on his objections. Id. The same cannot be said in regard to the situation presented in this appeal.

Thus, we conclude that the Court of Appeals erred in holding that the defendants waived their argument that the circuit court violated their due process rights by conducting a summary contempt proceeding. The defendants' motions to stay squarely presented their arguments to the circuit court and the court ruled on the merits of the objections. For these reasons, we hold that the defendants satisfied the requirements of Rule 5:25 and 5A:18 and preserved their arguments for appeal.

B. Summary Contempt

Citing In re Oliver, 333 U.S. 257 (1948), the defendants argue that, unless the contemptible conduct occurs entirely in the presence of the trial court, a party being held in contempt deserves notice of the charges, an opportunity to present a defense, and the assistance of counsel. Because they were not given any of these procedural rights, the defendants maintain they were deprived of their due process rights and ask this Court to reverse their respective convictions for summary contempt.

"It has long been recognized and established that a court is invested with power to punish for contempt." Higginbotham v. Commonwealth, 206 Va. 291, 294, 142 S.E.2d 746, 749 (1965). The exercise of this power, however, "is a delicate one and care is needed to avoid arbitrary or oppressive conclusions." Cooke v. United States, 267 U.S. 517, 539 (1925). "[T]he limits of the

26

power to punish for contempt are 'the least possible power adequate to the end proposed.' " Harris v. United States, 382 U.S. 162, 165 (1965).

Although the "power of the court to punish is the same," there are two distinct types of contempt, direct and indirect. Burdett v. Commonwealth, 103 Va. 838, 846, 48 S.E. 878, 881 (1904). Direct contempt occurs when the contemptible conduct "is committed in the presence of the court." Id. at 845-46, 48 S.E. at 880-81. In that circumstance, the court "is competent . . . to proceed upon its own knowledge of the facts, and to punish the offender without further proof, and without issue or trial in any form." Id. at 846, 485 S.E. at 881 (internal quotation marks omitted); see also Code § 18.2-456 (enumerating instances in which courts may summarily punish for contempt); International Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 832 (1994) ("[D]irect contempts in the presence of the court traditionally have been subject to summary adjudication, 'to maintain order in the courtroom and the integrity of the trial process in the face of an "actual obstruction of justice." ' ") (citations omitted). Indirect contempt, however, takes place when the contemptible conduct is "committed not in the presence of the court." Burdett, 103 Va. at 846, 48 S.E. at 881. In that circumstance, "the offender must be brought before the court by a rule or some other sufficient process." Id.; see

27

also United Mine Workers, 512 U.S. at 833 ("[P]rocedural protections are afforded for contempts occurring out of court, where the considerations justifying expedited procedures do not pertain.").  "Summary punishment always, and rightfully, is regarded with disfavor and, if imposed in passion or pettiness, brings discredit to a court as certainly as the conduct it penalizes."  Sacher v. United States, 343 U.S. 1, 8 (1952).

In In re Oliver, the Supreme Court summarized the distinction between direct and indirect contempt:

> Except for a narrowly limited category of contempts, due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.  The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public.  If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires . . . that the accused be accorded notice and a fair hearing as above set out.

333 U.S. at 275-76; see United States v. Marshall, 451 F.2d 372, 374 (9th Cir. 1971) (stating that when the misconduct occurs in the court's presence, "the judge is his own best witness of what

28

occurred" and that the use of the testimony of other witnesses precludes the use of summary contempt).

With regard to indirect contempt, the Supreme Court of the United States explained that when a judge

> can not have such personal knowledge [of the misbehavior], and is informed thereof only by confession of the party, or by testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished.

Cooke, 267 U.S. at 535.  Such due process is required because "[p]unishment without issue or trial [is] so contrary to the usual and ordinarily indispensable hearing before judgment, constituting due process, that the assumption that the court saw everything that went on in open court [is] required to justify the exception."  Id. at 536; see In re Oliver, 333 U.S. at 273 ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense . . . are basic in our system of jurisprudence.").  Therefore, unless the contempt is "committed in open court," due process "requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation." Cooke, 267 U.S. at 537.  This opportunity includes "the assistance of counsel, if requested, and the right to call witnesses."  Id.

Thus, we must address two questions.  First, did the contemptible conduct in this case occur "in open court, in the presence of the judge . . . where all of the essential elements of the misconduct [were] actually observed by the court"?  In re Oliver, 333 U.S. at 275.  And, if not, were the defendants advised of the charges against them and given a reasonable opportunity to meet them, the right to be represented by counsel, and the chance to testify and call other witnesses?  Cooke, 267 U.S. at 537.  Because the answer to both of these questions is no, we will reverse the defendants' convictions of contempt.

There is no question that the circuit court in this case did not observe all the "essential elements" of the alleged misconduct at issue.  The court concluded that Scialdone and Taylor "attempted to perpetrate a fraud upon [the] court by [Taylor's] altering a document that was to be presented to [the] court and [by Scialdone's] offering that fraudulent document to the court" in violation of Code § 18.2-456(4).  Although Scialdone's offering the document into evidence occurred in the circuit court's presence, the court's conclusion that the document was altered was the result of extensive questioning and evidence-gathering.  The circuit court repeatedly stated that it did not know what had taken place and that it would "get to the bottom of it."  After initially questioning Scialdone regarding

30

Documents 1 and 2, the court heard the client's father testify about the chat room rules he had provided in 2005. When that testimony revealed a different username had been used to obtain the 2005 copy, the court asked Scialdone the identity of "wndydpooh," the username on Document 2. Upon learning that Scialdone's secretary was named Wendy, the court directed Suttlage and Taylor to come to the courtroom and specifically instructed that they not be informed of the reason for their required appearance.

The circuit court then questioned Suttlage, Taylor, Jones, and Scialdone, all under oath, regarding Documents 1 and 2. Despite that questioning, the court still was not satisfied, stating that "[s]omebody has perpetrated a fraud on this court, and I will get to the bottom of it." After finding Taylor, Jones, and Scialdone in contempt, the court instructed Taylor to return to the law office and retrieve "every piece of paper . . . related to this case." When Taylor returned to the courtroom with additional documents, the court directed Suttlage to sort through the papers. This effort did not provide the court with satisfactory answers, so it twice instructed Suttlage to return to the law office to print additional copies of the chat room rules. On one of those occasions, the court directed a deputy sheriff to accompany Suttlage to the law office.

31

Finally, when the additional copies provided by Suttlage still did not allay the court's concerns, it ended the investigation and held the defendants in summary contempt.

Though the circuit court suspected Document 2 had been altered when Scialdone first offered it into evidence, the court's subsequent actions and statements demonstrate that it did not know what had occurred or who was responsible. In particular, the court's repeated requests that Suttlage return to the law office and print new copies of the chat room rules indicate that the court was not certain whether the absence of the copyright and print date on the submitted document was due to alteration or a function of the law office's computers and/or printers.

By the time it had completed its investigation, the circuit court had questioned four witnesses under oath, including the three defendants, and had obtained additional documents from the law office. Thus, it is clear that the circuit court did not "have . . . personal knowledge" of the misconduct, Cooke, 267 U.S. at 535, and that "all of the essential elements of the misconduct" were not "under the eye of the court." In re Oliver, 333 U.S. at 275. Rather, the court was "informed thereof only by confession of the party [and] testimony under oath of others." Cooke, 267 U.S. at 535. As in In re Oliver, the circuit court's

32

"conclusion that [the document was altered] was based, at least in part, upon the testimony given . . . by one or more witnesses other than petitioner." In re Oliver, 333 U.S. at 276. Thus, we conclude that the circuit court erred by employing a summary proceeding to find Scialdone and Taylor in contempt and thereby violated their due process rights.

We reach the same conclusion as to Jones. The circuit court found Jones in contempt for violating the prohibition in Code § 18.2-456(3) of "vile, contemptuous, and assaulting language addressed to . . . a judge," by "creating a screen name 'westisanazi.' " Although the document bearing the "westisanazi" username was offered into evidence by Scialdone, the court did not know the "essential elements" of what had taken place: in particular who had created and used that screen name. After asking Scialdone about the username, the court questioned Jones under oath, who then admitted creating the username and explained why he had done so. As with Scialdone and Taylor, the circuit court had to engage in fact-gathering before it knew that Jones was responsible for the username. Moreover, Jones' alleged misconduct in creating the username did not occur in the presence of the court. Jones' sole act was creating the username and printing Document 1 in the law office, which Scialdone then published to the court by offering it into

evidence.  To the degree Jones engaged in contemptible conduct, it occurred wholly outside the court's presence.

In sum, nothing indicates that defendants' conduct was "such an open, serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures, was necessary."  Harris, 382 U.S. at 165 (internal citation omitted).  The circuit court relied on the statements of the defendants, as well as others, and the gathering of additional documents before it knew the essential elements of the offenses.

By our decision today, we do not, however, imply that a trial court is unable to ask any questions in a summary contempt proceeding.  Circumstances will undoubtedly arise when a trial court observes the essential elements of the contemptible conduct, but nonetheless needs to ask questions to clarify some detail.  See, e.g., People v. Clancy, 239 Ill. App. 369, 375 (1926) (holding that some testimony can properly be heard in a case of direct contempt).  Indeed, a trial court will often provide the contemnor with an opportunity to show cause why he should not be held in contempt and ask questions in that regard. See, e.g., Pounders v. Watson, 521 U.S. 982, 985-86 (1997) (in summary contempt proceeding, court asked questions of the contemnor to explain conduct); State v. Roll, 298 A.2d

867, 872-73 (Md. 1973) (aware of the contemnor's offense, court heard additional testimony of details and asked contemnor to show cause); In re Yengo, 417 A.2d 533, 540-42 (N.J. 1980) (holding that unexplained absence of attorney requires explanation and some questioning).  But, as we have explained, a summary contempt proceeding in this case was improper and violated the defendants' due process rights.

Because this case is "outside the narrow category of cases that can be punished as contempt without notice, hearing and counsel," the defendants were entitled to the due process rights outlined by the Supreme Court in In re Oliver: "[notice] of the charges against [them],. . . a reasonable opportunity to meet them by way of defense or explanation, . . . the right to be represented by counsel, and . . . a chance to testify and call other witnesses in [their] behalf, either by way of defense or explanation."  333 U.S. at 275.  Although the circuit court afforded the defendants an opportunity to explain their conduct, albeit under oath and upon questioning by the court, that opportunity alone did not satisfy the due process rights to which the defendants were entitled.  The defendants were not notified of the nature of the charges before being questioned by the circuit court.  Accord Davis v. Commonwealth, 219 Va. 395, 397-98, 247 S.E.2d 681, 682-83 (1978) (finding violation of

appellant's due process rights when he was told to appear in court but was not told that the purpose for the appearance was to explain why he should not be found in contempt). Without such notice, the defendants could not prepare a defense to the charges before they were placed under oath and questioned. In addition, the circuit court did not provide the defendants the right to call witnesses on their behalf or to retain counsel. In fact, the court maintained its belief throughout the proceeding that the defendants had no right to counsel. In sum, the circuit court did not afford the defendants the due process rights to which they were entitled.

### III. CONCLUSION

For the reasons stated, we conclude the Court of Appeals erred by holding that the defendants failed to preserve their argument that the circuit court deprived them of due process by proceeding with summary contempt. We further conclude that the circuit court erred by failing to afford the defendants a plenary proceeding with the requisite due process rights. Thus, we will reverse the judgment of the Court of Appeals and remand with directions that the Court of Appeals remand to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.