COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Decker, Malveaux and Senior Judge Annunziata


MELINDA MARIE BIBY, SOMETIMES KNOWN AS
 MALINDA MARIE BIBY

v.     Record No. 0266-16-3

SHENANDOAH VALLEY DEPARTMENT OF
 SOCIAL SERVICES                                    MEMORANDUM OPINION*
                                                      PER CURIAM
MELINDA MARIE BIBY, SOMETIMES KNOWN AS             AUGUST 23, 2016
 MALINDA MARIE BIBY

v.     Record No. 0267-16-3

SHENANDOAH VALLEY DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Victor V. Ludwig, Judge

(Arthur D. Bernstein, on brief), for appellant. Appellant submitting
on brief.

(James B. Glick; Angela V. Whitesell; Avery B. Cousins, III,
Guardian *ad litem* for the minor children; Vellines, Glick &
Whitesell, P.C.; Cousins Law Offices, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Malinda Marie Biby (mother) appeals the orders terminating her parental rights to her

children, T. and W. Mother argues that the circuit court erred by (1) terminating her parental rights

to T. because Code § 16.1-283(G) bars the termination of parental rights when a child who is

fourteen years of age or older objects to the termination; (2) terminating her parental rights to W.,

contrary to W.'s wishes and the "legislature's presumption that family unity should be preserved"

because the termination of mother's parental rights will negatively affect mother's relationship with

W. and W's relationship with T.; and (3) refusing mother's request to provide a court reporter and

transcript of the proceedings. Upon reviewing the record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Mother has three children.[1] T. was born in September 2001, and W. was born in December 2007. The Shenandoah Valley Department of Social Services (the Department) had been involved with mother and her children since 2008. In October 2012, mother tested positive for methamphetamines, opiates, oxycodone, cocaine, and methadone. She signed a safety agreement, in which she agreed to refrain from using illegal substances. After the incident in October 2012, the Department received additional calls regarding mother's use of drugs and her erratic behavior. On December 6, 2012, mother told a worker with the Department that she and the children had nowhere to stay because she had been evicted from a homeless shelter. Housing was found for mother and the children the night of December 6, 2012. On December 7, 2012, a social worker visited mother and asked her to take a drug screen. Mother tested positive for cocaine and "benzos." On December 7, 2012, the Department removed T. and W. from mother's care due to concerns about parental supervision, drug abuse, and continued homelessness. On January 9, 2013, the juvenile and domestic relations district court (the JDR court) held an adjudicatory hearing and found the children to be abused and neglected.

The Department referred mother to six drug treatment programs, but mother did not complete any of them. After seven days, she left the New Hope Detox Center, which had a twenty-one-day program. Mother was discharged because of lack of participation at a program

---

[1] Mother's oldest child is no longer a minor and not subject to this appeal.

with the Valley Community Service Board (VCSB). Mother was discharged because of lack of compliance at Recovery Choice. Mother returned to a program at VCSB, but did not appear on the first day and tested positive for drugs on the second day. She did not appear on the third day. Mother was scheduled to participate in a program at Rockingham Memorial Hospital, but when the clinician tried to interview mother at her home, he discovered that she was evicted. Mother enrolled in another program at VCSB, but completed only nineteen out of thirty-two sessions. She did not participate in the Aftercare program. On several occasions, mother tested positive for drugs and refused drug screens.

The Department referred mother for a psychological evaluation, which she completed in February 2013. The same clinician evaluated mother in 2009. The evaluator testified that the results from the two evaluations were similar; however, his recommendations in 2013 differed from those in 2009 because of mother's substance abuse problems. He recommended that she participate in a drug treatment program and have random drug screens. He also recommended counseling and possible medication. He further suggested that she participate in a parent education program.

The Department referred mother for a parental attachment evaluation, which also measured her parenting capacity. Mother's testing revealed the lowest score the psychologist had seen for measuring parenting capacity. The psychologist opined that mother was not psychologically stable and did not recommend that the children be returned to her care.

The Department referred mother to other programs, which she did not complete. For example, mother did not complete a parenting class. She did not participate in individual counseling. Mother's housing was unstable. She frequently moved and was evicted. There were times when she was homeless.

The Department acknowledged that mother was generally employed while the children were in foster care. She primarily cleaned for motels and individuals; however, she also worked in fast-food restaurants for a few months.

In addition to the other services provided, the Department arranged for visitation between mother and the children. Mother visited weekly. However, the visits were suspended on July 2, 2013, due to mother testing positive for drugs. The visits resumed on October 9, 2013, when mother tested negative for drugs.

Since January 2013, a therapist worked with W. and helped her with "acting out" behaviors, social skills, and transition between foster care homes. The therapist noticed that after W. visited with mother, W. would regress and act out. After an unexpected encounter with mother at a public location, the child experienced post-traumatic stress symptoms and had to be medicated. The therapist recommended that mother not have contact with W. because the child was "at risk of psychological harm." The therapist noted that W. will need ongoing therapy and parents who can handle her significant needs.

Another therapist worked with T. from January 2013 until March 2014, when T. moved to a residential facility.[2] The therapist stated that T. acted out and had significant mood swings. When his visits with mother were suspended, T. had outbursts at home, but was calmer in therapy. When the visits were reestablished, T. became "totally apathetic about everything." The therapist opined that T. will need a "positive and capable parent" who takes a "strong hand with a strong purpose."

On May 28, 2014, the JDR court terminated mother's parental rights to the children and approved the goals of adoption. Mother appealed the orders terminating her parental rights.

---

[2] At the time of the final hearing, T. had moved out of the residential facility and was in a therapeutic foster home. He has a new therapist.

On July 14, 2015, mother was convicted of two charges of grand larceny and sentenced to five years in prison, with five years suspended.

After several continuances, the circuit court heard evidence and argument regarding the termination of mother's parental rights on September 9, 2015. The parties submitted their closing arguments in writing.

On October 7, 2015, mother was convicted of three counts of credit card theft and sentenced to five years in prison, with four years and five months suspended. Mother did not report to jail, so a capias was issued for her. She was arrested on December 2, 2015.

On December 7, 2015, mother pled guilty to two additional felonies. She received a suspended sentence.

On January 7, 2016, the circuit court issued a twenty-three-page letter opinion. The circuit court concluded that the termination of mother's parental rights was in the children's best interests. It terminated mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2). The circuit court noted that mother's current incarceration exacerbated her situation, but did not impact the circuit court's final opinion. Furthermore, the circuit court noted that although T. was fourteen years old at the time of the hearing, neither mother nor the guardian *ad litem* presented any direct evidence, pursuant to Code § 16.1-283(G), as to whether T. objected to the termination of mother's parental rights.[3] On January 22, 2016, the circuit court entered the final orders terminating mother's parental rights to T. and W. These appeals followed.

---

[3] Mother sent an *ex parte* letter to the court asking that it meet with T. *in camera*. The guardian *ad litem* objected. The circuit court did not respond to the *ex parte* communications and reminded the parties that there is "an orderly procedure by which such matters can be brought before the Court on a motions day, affording any litigant an opportunity to set a time for a hearing at which all parties appear and participate." Mother did not request such a hearing or make any further requests for the circuit court to speak with T.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Assignment of error #1*

Mother argues that the circuit court erred by terminating her parental rights with respect to T. "in contravention of Virginia Code Section 16.1-283G barring such termination where a child 14 years of age or older objects to termination in the absence of a finding that such child is not developmentally of an age of discretion." In support of that argument, mother first contends the record included evidence of T.'s objection to the termination of parental rights. Then, mother asserts that the court had a statutory obligation to take the actions necessary to establish T.'s desires.

Code § 16.1-283(G) states:

> Notwithstanding any other provisions of this section, residual parental rights shall not be terminated if it is established that the child, if he is 14 years of age or older or otherwise of an age of discretion as determined by the court, objects to such termination. However, residual parental rights of a child 14 years of age or older may be terminated over the objection of the child, if the court finds that any disability of the child reduces the child's developmental age and that the child is not otherwise of an age of discretion.

On May 28, 2015, prior to the trial, mother sent a letter to the circuit court judge and asked the judge to speak with T. in chambers. The child's guardian *ad litem* (GAL) submitted a letter in response. The GAL opposed the request and explained that the child's therapist felt that it could "disrupt his [T.'s] current fragile stability."

Mother did not file a formal motion or request a hearing on the matter. She did not subpoena the child to the final hearing, nor did she renew her request at trial. Instead, she mentioned in her written argument to the court after the hearing that the court should have spoken with T. pursuant to Code § 16.1-283(G).

The circuit court held that it had "no direct evidence from the child as to whether he opposes termination or not." It noted that T. "did not appear at the hearing, he did not testify, and the informal request (by letter) that the Court interview him in chambers was not renewed."

Assuming without deciding that mother's argument is preserved, the record supports the circuit court's finding that the evidence did not establish T.'s objection to the termination of parental rights. Mother argued that during the parenting capacity evaluation T. told the evaluator that he wanted to live with his mother. However, the evaluation was done in January 2014, when T. was twelve years old. Mother contends the record did not include any evidence that T. had changed his mind, so the circuit court should still consider the 2014 assertion. Code § 16.1-283(G) requires a trial court to consider the wishes of a child who is fourteen years or older, or at the age of discretion. The statute does not require the circuit court to consider an opinion that is two years old and made by a twelve year old. Mother did not present any evidence regarding T.'s wishes once he turned fourteen years old, so the circuit court was unable to consider the wishes of T. pursuant to Code § 16.1-283(G).

Furthermore, mother did not preserve her argument that the trial erred by not taking the necessary steps to establish the child's desires. Mother contends the circuit court should have spoken with T., as she requested in her letter, and since it did not do so, the circuit court erred in terminating her parental rights to T. Mother argues that Deahl v. Winchester Dep't of Soc. Servs., 224 Va. 664, 299 S.E.2d 863 (1983), controls and supports her argument. We disagree. The Supreme Court of Virginia held in Deahl that the trial court erred because it failed to rule on

whether the child was of the "age of discretion." Id. at 675-76, 299 S.E.2d at 869. However, in this case, the circuit court noted that at the time of the final hearing, T. was fourteen years old, so there was no issue about whether the child had reached the age of discretion. In Deahl, the child was present and testified at the hearing. Id. at 669-70, 299 S.E.2d at 865-66. In this case, T. was not present and did not testify at the final hearing. The circuit court stated that "no party made any effort to put before the Court that [T.] objected to the termination of [mother's] rights after he had attained the age of 14 years." The circuit court further explained, "Had any party (including the guardian *ad litem*) known that [T.] wished to voice an objection, that party could have called the child to testify or at least made him available for the Court to interview. That did not happen . . . ."

Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "To satisfy [Rule 5A:18], 'an objection must be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error.'" Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) (quoting Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002)). "If a party fails to make a timely objection, the objection is waived for purposes of appeal." Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 79, 688 S.E.2d 199, 207-08 (2010) (quoting Shelton v. Commonwealth, 274 Va. 121, 126, 645 S.E.2d 914, 916 (2007)).

Although mother requested in a letter that the circuit court speak with T., she did not raise the issue again during the trial; instead, she waited until she submitted her written closing argument to the circuit court. At that point, it was too late because both parties had rested their

case. Consequently, mother waived her objection to the circuit court not speaking with T. regarding his current opinion on the termination of mother's parental rights.

*Assignment of error #2*

Mother argues that the circuit court erred in terminating her parental rights to W. contrary to W.'s wishes and the "legislature's presumption that family unity should be preserved when such termination here would negatively affect the relationship not only of [W.] and [mother] but of [W.] and her sibling [T.]."

The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2). Code § 16.1-283(B) states that parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

This Court has explained the differences between Code § 16.1-283(B) and (C) as:

> [S]ubsection B [of Code § 16.1-283] "speaks prospectively" and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems. In contrast, subsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the

> demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Contrary to mother's arguments, W.'s wishes should not be the deciding factor because W. is under the age of fourteen. Code § 16.1-283(G). Instead, the court correctly focused on W.'s best interest and whether the Department proved that mother did not substantially remedy the conditions that led to W. being placed in foster care. See Richmond Dep't of Soc. Servs. v. Crawley, 47 Va. App. 572, 579, 625 S.E.2d 670, 673 (2006). Of these two factors, "the child's best interest is the paramount concern." Id. (quoting Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 827, 433 S.E.2d 500, 503 (1993)).

The circuit court noted that in October 2012, mother was so impaired that she could hardly walk, and her head kept swinging back and forth. Mother tested positive for methamphetamines, opiates, oxycodone, cocaine, and methadone. By December 2012, mother and the children were homeless. She tested positive for drugs again. The JDR court subsequently found that the children were abused and neglected, and that decision was not appealed.

At the time of the circuit court's detailed letter opinion, the children had been in foster care for approximately three years. During that time, mother had not completed the Department's requirements for reunification, including completing a substance abuse program and obtaining and maintaining stable housing. The circuit court was concerned about the results of mother's psychological examination and her parental attachment evaluation. The circuit court

noted that mother had "troubling issues of [her] inability to deal with the problems that adversely impact her acting as an effective parent, and worse, her inability even to recognize that she has any deficiencies and her refusal to take responsibility for them."

In its letter opinion, the circuit court acknowledged the "primacy of parental rights," but also recognized the importance of the children's best interests. The circuit court heard evidence that W. experienced post-traumatic stress symptoms and had to be medicated after unexpectedly seeing her mother. After the visitations stopped, W. improved but required ongoing therapy. Mother was not in a position to take the children, and she had not done what the Department asked of her. The circuit court concluded, "These children's wait, overlong already, cannot continue; [mother's] rights, torpedoed by her conduct, must give way to her children's rights to a stable, secure, and certain environment."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Here, the evidence proved that mother has significant substance abuse problems that presented a serious threat to W. Despite the fact that W. was in foster care for approximately three years, mother was unable to substantially remedy the problems that led to W. being placed, and remaining, in foster care. Therefore, the circuit court did not err in terminating mother's parental rights to W.

### Assignment of error #3

Mother argues that the circuit court erred by not granting her motion for a court reporter and transcript.

On May 21, 2015 and August 3, 2015, mother filed motions for a court reporter. On August 12, 2015, the circuit court sent counsel a letter requesting "specific authority" which allows it to appoint a court reporter in a termination of parental rights case. On August 19, 2015, mother's counsel sent a letter to the circuit court in response to its August 12, 2015 letter. Mother cited statutes in the criminal code that allowed for appointments in criminal matters, and she cited M.L.B. v. S.L.J., 519 U.S. 102 (1996), to support her position. On October 7, 2015, the circuit court entered an order denying mother's request and found that mother did not have a constitutional right to a transcript under M.L.B. The circuit court relied on Draper v. Washington, 372 U.S. 487 (1963), which held that alternative methods of reporting are permissible.

The circuit court issued a twenty-three-page letter opinion on January 7, 2016. The letter opinion summarized the testimony and evidence presented at trial. Mother submitted a written statement of facts, which incorporated the letter opinion and supplemented it. The circuit court approved the written statement of facts, with an addition.

On appeal, mother argues that the "actual testimony is important to determine the meaning of their [the witnesses'] conclusions," especially the therapists. She contends a transcript would more accurately describe the direct and cross-examinations of the witnesses. She does not specify what was not included in the circuit court's summary or written statement of facts, nor does she state why the witnesses' actual testimony is necessary.

As she did in the circuit court, mother relies on M.L.B. to support her position on appeal. In M.L.B., the Supreme Court of the United States compared the termination of parental rights cases with criminal cases and held,

> It would be anomalous to recognize a right to a transcript needed to appeal a misdemeanor conviction -- though trial counsel may be flatly denied -- but hold, at the same time, that a transcript need not

be prepared for M.L.B. -- though were her defense sufficiently complex, state-paid counsel, . . . would be designated for her.

M.L.B., 519 U.S. at 123. The Court concluded, "Mississippi may not withhold from M.L.B. 'a "record of sufficient completeness" to permit proper [appellate] consideration of [her] claims.'"

Id. at 128 (quoting Mayer v. Chicago, 404 U.S. 189, 198 (1971)).

Here, the circuit court relied on the rationale in footnote 5 of M.L.B., which stated:

> Griffin did not impose an inflexible requirement that a State provide a full trial transcript to an indigent defendant pursuing an appeal. See Griffin v. Illinois, 351 U.S. 12, 20 (1956) (State need not purchase a stenographer's transcript in every case where an indigent defendant cannot buy it; State "Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants."). In Draper v. Washington, 372 U.S. 487 (1963), we invalidated a state rule that tied an indigent defendant's ability to obtain a transcript at public expense to the trial judge's finding that the defendant's appeal was not frivolous. 372 U.S. at 498-500. We emphasized, however, that the Griffin requirement is not rigid. "Alternative methods of reporting trial proceedings," we observed, "are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." 372 U.S. at 495. Moreover, we held, an indigent defendant is entitled only to those parts of the trial record that are "germane to consideration of the appeal." Ibid.; see also Mayer v. Chicago, 404 U.S. 189, 194 (1971) ("A record of sufficient completeness does not translate automatically into a complete verbatim transcript." (internal quotation marks omitted)).

Id. at 112 n.5.

The Appellate Court of Illinois, Second District, distinguished M.L.B. and held that a transcript was not required in all termination of parental rights cases. See In re Adoption of K.L.P., 735 N.E.2d 1071 (Ill. App. Ct., 2d Dist. 2000). The Illinois court found that the record included a fifteen-page bystander's report of the facts, which summarized the witnesses' testimony, so the court concluded, "Under the circumstances, we find the record was sufficiently complete to permit proper appellate consideration of her claims. Accordingly, we hold that the

respondent's constitutional rights were not violated by the lack of a court reporter." Id. at 1081-82.

Likewise, we consider whether there is a "record of sufficient completeness," so a transcript is not necessary. In this case, the record includes a detailed letter opinion with summaries of the testimony. The written statement of facts expands on the letter opinion. Therefore, we hold that there is a "record of sufficient completeness," and the circuit court did not err in denying mother's request for a court reporter and transcript.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.